UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D. N.Y.

★  FEB 29 2008  ★

BROOKLYN OFFICE

ARLETTE MILLER, on Behalf of Herself
and All Others Similarly Situated,

                Plaintiff,

        vs.

WACHOVIA CORPORATION,
WACHOVIA CAPITAL TRUST IX, G.
KENNEDY THOMPSON, MARK C.
TREANOR, THOMAS J. WURTZ, PETER
M. CARLSON, JOHN D. BAKER II,
ROBERT J. BROWN, PETER C.
BROWNING, JOHN T. CASTEEN, III,
JEROME A. GITT, WILLIAM H.
GOODWIN, JR., MARYELLEN C.
HERRINGER, ROBERT A. INGRAM,
DONALD M. JAMES, MACKEY J.
McDONALD, JOSEPH NEUBAUER,
TIMOTHY D. PROCTOR, ERNEST S.
RADY, VAN L. RICHEY, RUTH G.
SHAW, LANTY L. SMITH, JOHN C.
WHITAKER, JR., DONA DAVIS YOUNG,
WACHOVIA CAPITAL MARKETS, LLC,
CITIGROUP GLOBAL MARKETS INC.,
MERRILL LYNCH PIERCE, FENNER &
SMITH INCORPORATED, MORGAN
STANLEY & CO. INCORPORATED and
UBS SECURITIES LLC,

               Defendants.

08 Civ. __CV 08__ __879__

Removed from:

Supreme Court of the State of New York
County of Nassau

Index No. 001970/2008

SEYBERT, J

WALL, M.

## NOTICE OF REMOVAL

    PLEASE TAKE NOTICE that Defendants Wachovia Corporation, Wachovia

Capital Trust IX, and Wachovia Capital Markets, LLC (the "Wachovia Defendants") and

Defendants G. Kennedy Thompson, Mark C. Treanor, Thomas J. Wurtz, Peter M. Carlson, John

D. Baker II, Robert J. Brown, Peter C. Browning, John T. Casteen, III, Jerome A. Gitt, William

H. Goodwin, Jr., Maryellen C. Herringer, Robert A. Ingram, Donald M. James, Mackey J. McDonald, Joseph Neubauer, Timothy D. Proctor, Ernest S. Rady, Van L. Richey, Ruth G. Shaw, Lanty L. Smith, John C. Whitaker, Jr., and Dona Davis Young (the "Individual Defendants") (collectively, the "Removing Defendants"), by and through their undersigned attorneys, hereby remove the above-captioned civil action, and all claims and causes of action therein, from the Supreme Court of the State of New York, County of Nassau, to the United States District Court for the Eastern District of New York, pursuant to (i) 28 U.S.C. §§ 1441, 1446, and 15 U.S.C. § 77p(c) and (ii) in the alternative, 28 U.S.C. § 1332(d). The Removing Defendants appear for the purpose of removal only and for no other purpose, reserve all defenses and rights available to them, and state as follows:

   1. Plaintiff filed the above-captioned putative class action on January 31, 2008 in the Supreme Court of the State of New York, County of Nassau, under Index. No. 001970/2008 (the "State Court Action"). Pursuant to 28 U.S.C. § 1446(a) and Rule 81.1(b) of the Local Civil Rules of the United States District Court for the Eastern District of New York, copies of the Summons and Complaint filed in the State Court Action are attached hereto as Exhibit A.

   2. This action is within the original jurisdiction of this Court under 28 U.S.C. § 1331 and 15 U.S.C. § 77v(a) because it purports to assert federal claims arising under the Securities Act of 1933 (the "Securities Act"). In particular, Plaintiff purports to assert claims against all Defendants under Sections 11 and 12(a)(2) of the Securities Act. Plaintiff also purports to assert claims against the Individual Defendants under Section 15 of the Securities Act.

3.     This action is removable under 28 U.S.C. § 1441(a) and the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), Pub. L. No. 105-353, 112 Stat. 3227 (1998).  Under 28 U.S.C. § 1441, "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed ... to the district court of the United States embracing the place where such action is pending."

4.     SLUSA amended the Securities Act to create an exception to the Securities Act's non-removal provision.  As amended by SLUSA, Section 22(a) of the Securities Act provides that "[e]xcept as provided in Section 16(c), no case arising under this title and brought in any State court of competent jurisdiction shall be removed to any court of the United States."  15 U.S.C. § 77v(a) (emphasis added).  As alleged in the Complaint, this case arises "under this title," namely the Securities Act.  Section 16(c) of the Securities Act provides that "[a]ny covered class action brought in any state court involving a covered security, as set forth in subsection (b), shall be removable to the federal district court for the district in which the action is pending ...."  15 U.S.C. § 77p(c).[1]  Section 16(b) refers to covered class actions alleging "an untrue statement or omission of material fact in connection with the purchase or sale of a covered security" or "that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security."  15 U.S.C. § 77p(b).  As alleged in the Complaint and as set forth below, this action is a covered class action alleging untrue statements or omissions of material fact in connection with the purchase or sale of a covered security.

---

[1]   Removal to this Court is based upon the allegations of the Complaint.  The Removing Defendants do not concede, and expressly preserve, all rights and objections with respect to the allegations that this action properly has been brought, or may be prosecuted as, a class action.

5.      This action is a "covered class action" within the meaning of 15 U.S.C. § 77p(f)(2)(A) because (i) Plaintiff is seeking the recovery of damages on behalf of herself and a prospective class of other similarly situated purchasers of Wachovia Capital Trust IX 6.375% Trust Preferred Securities (the "Securities") and Plaintiff alleges that questions of law or fact common to the members of the prospective class predominate over any questions affecting only individual persons or members and (ii) damages are sought on behalf of more than 50 persons or prospective class members and Plaintiff alleges that questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members. *See* Compl. ¶¶ 41-46.

6.      This action involves a "covered security" because, as alleged in the Complaint, the Securities were publicly offered and are listed on the New York Stock Exchange. 15 U.S.C. § 77p(f)(3); 15 U.S.C. § 77r(b)(1); Compl. ¶ 50.

7.      Accordingly, Plaintiff's claims are removable to this Court under 28 U.S.C. § 1441 and 15 U.S.C. §§ 77p(c) and 77v. *See, e.g., Rubin v. Pixelplus Co.*, No. 06-CV-2964 (ERK), 2007 WL 778485, at *6 (E.D.N.Y. March 13, 2007); *Brody v. Homestore, Inc.*, 240 F. Supp. 2d 1122, 1124 (C.D. Cal. 2003); *Alkow v. TXU Corp.*, No. 3:02-CV-2738-K, 2003 WL 21056750, at *1-2 (N.D. Tex. May 8, 2003).

8.      Alternatively, if Plaintiff asserts that this action is not a "covered class action" or does not involve a "covered security," then it is removable under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2 (2005), codified at 28 U.S.C. §§ 1332(d) and 1453.  Pursuant to 28 U.S.C. § 1332(d), as amended by CAFA, a putative class action commenced after February 18, 2005 may be removed to the appropriate federal district court if:

(i) any member of the putative class is a citizen of a state different from any defendant; (ii) the putative class action consists of at least 100 putative class members; and (iii) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d) & 1453.

9.     This action was commenced after the effective date of CAFA and is a class action in which at least one member of the putative class of plaintiffs is a citizen of a state different from a defendant. 28 U.S.C. § 1332(d)(2)(A). Defendant Wachovia Corporation ("Wachovia") is a financial holding company and bank holding company incorporated under North Carolina law with its principal place of business in North Carolina. Defendant Wachovia Capital Trust IX ("WCT") is a statutory trust formed under Delaware law with its principal place of business in North Carolina. Defendant Wachovia Capital Markets LLC ("WCM") is a Delaware limited liability company with its principal place of business in North Carolina. Defendant Citigroup Global Markets Inc. ("CGMI") is a New York corporation with its principle place of business in New York. Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") is a Delaware corporation with its principal place of business in New York. Defendant Morgan Stanley & Co. Incorporated ("Morgan Stanley") is a Delaware corporation with its principal place of business in New York. Defendant UBS Securities LLC ("UBS") is a Delaware limited liability company with its principle place of business in Connecticut. Upon information and belief, Plaintiff is a citizen of New York. *See* Compl. ¶ 7. Accordingly, because there is diversity between Plaintiff and the Wachovia Defendants at least one member of the proposed class is a citizen of a state different from at least one defendant and the minimal diversity requirements of CAFA are therefore satisfied. *See* 28 U.S.C. § 1332(d)(2)(C).

10.     Moreover, this action is removable under CAFA notwithstanding the fact that certain defendants are citizens of New York, the state in which the action was brought. *See* § 28 U.S.C. § 1453(b) ("[A] class action may be removed ... without regard to whether any defendant is a citizen of the State in which the action is brought ... .").

11.     CAFA requires that "the number of members of all proposed plaintiff classes in the aggregate" be at least 100." 28 U.S.C. § 1332(d)(5)(B).  Plaintiff alleges that "there are hundreds of members in the proposed Class." Compl. ¶ 42.  Accordingly, based upon the allegations in the Complaint, the requirement that the number of members in the putative class be 100 or more is satisfied. *See* 28 U.S.C. § 1332(d)(5)(B).

12.     In addition, upon information and belief, the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.  Under 28 U.S.C. § 1332(d), as amended by CAFA, the amount in controversy in a putative class action is determined by aggregating the claims of all members.  28 U.S.C. § 1332(d)(6).  Here, the Complaint alleges that Defendants made misstatements and omissions in connection with the public sale of 30 million of the Securities for proceeds of approximately $750,000,000.00 and that the value of the Securities has declined substantially due to Defendants' alleged violations. *See, e.g.*, Compl. ¶ 3.  Plaintiff further alleges that the Securities were issued for $25.00 per Security and that the prices of the Securities dropped to "nearly $20" per Security following the announcements on which Plaintiff purports to base her claims. *See* Compl. ¶ 60.  These allegations suffice to meet CAFA's amount in controversy requirement.

13.     The Wachovia Defendants were served with the Summons and Complaint on February 5, 2008, and Plaintiff attempted to serve the Individual Defendants the same day.[2]

---

[2]   The Individual Defendants do not concede that this attempt was good service.

-6-

Defendants Merrill Lynch, Morgan Stanley, and UBS were served on February 6, 2008.

Defendant CGMI was served on February 7, 2008. Because this Notice of Removal is being

filed within 30 days of the earliest date that any of the Defendants were served with the

Complaint, it is timely filed under 28 U.S.C. § 1446(b).

14.     Defendants will promptly serve a copy of this Notice on counsel for

Plaintiff and will file a copy of this Notice with the Clerk of the Supreme Court of the State of

New York, County of Nassau, pursuant to 28 U.S.C. § 1446(d).

15.     All Defendants who have been properly served concur in the removal of

this action to this Court, subject to and without waiving any defenses and rights available to

them.

16.     No other process, pleading, or order has been served on Defendants in this

action.

WHEREFORE, Defendants Wachovia Corporation, Wachovia Capital Trust IX,

Wachovia Capital Markets, LLC, G. Kennedy Thompson, Mark C. Treanor, Thomas J. Wurtz,

Peter M. Carlson, John D. Baker II, Robert J. Brown, Peter C. Browning, John T. Casteen, III,

Jerome A. Gitt, William H. Goodwin, Jr., Maryellen C. Herringer, Robert A. Ingram, Donald M.

James, Mackey J. McDonald, Joseph Neubauer, Timothy D. Proctor, Ernest S. Rady, Van L.

Richey, Ruth G. Shaw, Lanty L. Smith, John C. Whitaker, Jr., and Dona Davis Young

respectfully request removal of this action from the Supreme Court of the State of New York, County of Nassau, to the United States District Court for the Eastern District of New York.

Dated:  New York, New York
          February 29, 2008

                        MILBANK, TWEED, HADLEY & McCLOY
                          LLP

By: _____
        James N. Benedict (JB-6240)
        Douglas W. Henkin (DH-1751)
        Robert C. Hora (RH-7672)
1 Chase Manhattan Plaza
New York, NY 10005-1413
(212) 530-5000

*Attorneys for Defendants Wachovia Corporation, Wachovia Capital Trust IX, G. Kennedy Thompson, Mark C. Treanor, Thomas J. Wurtz, Peter M. Carlson, John D. Baker II, Robert J. Brown, Peter C. Browning, John T. Casteen, III, Jerome A. Gitt, William H. Goodwin, Jr., Maryellen C. Herringer, Robert A. Ingram, Donald M. James, Mackey J. McDonald, Joseph Neubauer, Timothy D. Proctor, Ernest S. Rady, Van L. Richey, Ruth G. Shaw, Lanty L. Smith, John C. Whitaker, Jr., Dona Davis Young, and Wachovia Capital Markets, LLC*

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

———————————————————— x

ARLETTE MILLER, on Behalf of Herself
and All Others Similarly Situated,

                    Plaintiff,

      vs.

WACHOVIA CORPORATION,
WACHOVIA CAPITAL TRUST IX, G.
KENNEDY THOMPSON, MARK C.
TREANOR, THOMAS J. WURTZ,
PETER M. CARLSON, JOHN D. BAKER
II, ROBERT J. BROWN, PETER C.
BROWNING, JOHN T. CASTEEN, III,
JEROME A. GITT, WILLIAM H.
GOODWIN, JR., MARYELLEN C.
HERRINGER, ROBERT A. INGRAM,
DONALD M. JAMES, MACKEY J.
McDONALD, JOSEPH NEUBAUER,
TIMOTHY D. PROCTOR, ERNEST S.
RADY, VAN L. RICHEY, RUTH G.
SHAW, LANTY L. SMITH, JOHN C.
WHITAKER, JR., DONA DAVIS
YOUNG, WACHOVIA CAPITAL
MARKETS, LLC, CITIGROUP GLOBAL
MARKETS INC., MERRILL LYNCH,
PIERCE, FENNER & SMITH
INCORPORATED, MORGAN STANLEY
& CO. INCORPORATED and UBS
SECURITIES LLC,

                    Defendants.

———————————————————— x

Index No.: 001970/2008

Date Purchased:

Plaintiff designates Nassau County
as the place of trial.

The basis of the venue is
Plaintiff's Residence

## SUMMONS

Plaintiff(s) resides at
855 Briar Place
Woodmere, New York 11598



RECEIVED

FEB 0 5 2008

LEGAL DIVISION

COUNTY OFFICE

To the above named Defendant:

      You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

DATED:    Melville, New York        COUGHLIN STOIA GELLER RUDMAN &
          January 31, 2008           ROBBINS LLP


                                     By: SAMUEL H. RUDMAN
                                         DAVID A. ROSENFELD
                                         MARIO ALBA, JR.

                                     58 South Service Road, Suite 200
                                     Melville, NY 11747
                                     Telephone: 631/367-7100
                                     631/367-1173 (fax)

                                     COUGHLIN STOIA GELLER
                                       RUDMAN & ROBBINS LLP
                                     DARREN J. ROBBINS
                                     DAVID C. WALTON
                                     655 West Broadway, Suite 1900
                                     San Diego, CA 92101
                                     Telephone: 619/231-1058
                                     619/231-7423 (fax)

                                     ABRAHAM FRUCHTER
                                       & TWERSKY LLP
                                     JACK G. FRUCHTER
                                     One Pennsylvania Plaza, Suite 2805
                                     New York, NY 10119
                                     Telephone: 212/279-5050
                                     212/279-3655 (fax)

                                     Attorneys for Plaintiff

Defendant's address:

**Wachovia Corporation**              **Wachovia Capital Trust Ix**
301 South College Street,             c/o Wachovia Corporation
Suite 4000                            301 South College Street,
One Wachovia Center                   Suite 4000
Charlotte, North Carolina 28288       One Wachovia Center
                                      Charlotte, North Carolina 28288


**G. Kennedy Thompson**               **Mark C. Treanor**
c/o Wachovia Corporation              c/o Wachovia Corporation
301 South College Street,             301 South College Street,
Suite 4000                            Suite 4000
One Wachovia Center                   One Wachovia Center
Charlotte, North Carolina 28288       Charlotte, North Carolina 28288

**Thomas J. Wurtz**
c/o Wachovia Corporation
301 South College Street,
Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288

**John D. Baker II**
c/o Wachovia Corporation
301 South College Street,
Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288

**Peter C. Browning**
c/o Wachovia Corporation
301 South College Street,
Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288

**Jerome A. Gitt**
c/o Wachovia Corporation
301 South College Street,
Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288

**Maryellen C. Herringer**
c/o Wachovia Corporation
301 South College Street,
Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288

**Donald M. James**
c/o Wachovia Corporation
301 South College Street,
Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288

**Joseph Neubauer**
c/o Wachovia Corporation
301 South College Street,
Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288

**Peter M. Carlson**
c/o Wachovia Corporation
301 South College Street,
Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288

**Robert J. Brown**
c/o Wachovia Corporation
301 South College Street,
Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288

**John T. Casteen, III**
c/o Wachovia Corporation
301 South College Street,
Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288

**William H. Goodwin, Jr.**
c/o Wachovia Corporation
301 South College Street,
Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288

**Robert A. Ingram**
c/o Wachovia Corporation
301 South College Street,
Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288

**Mackey J. Mcdonald**
c/o Wachovia Corporation
301 South College Street,
Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288

**Timothy D. Proctor**
c/o Wachovia Corporation
301 South College Street,
Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288

**Ernest S. Rady**
c/o Wachovia Corporation
301 South College Street,
Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288

**Ruth G. Shaw**
c/o Wachovia Corporation
301 South College Street,
Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288

**John C. Whitaker, Jr.**
c/o Wachovia Corporation
301 South College Street,
Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288

**Wachovia Capital Markets, LLC**

**Merrill Lynch**
World Financial Center, North Tower
250 Vesey Street
New York, New York 10080

**Morgan Stanley & Co. Incorporated**
1585 Broadway
New York, NY 10036

**Van L. Richey**
c/o Wachovia Corporation
301 South College Street,
Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288

**Lanty L. Smith**
c/o Wachovia Corporation
301 South College Street,
Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288

**Dona Davis Young**
c/o Wachovia Corporation
301 South College Street,
Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288

**Citigroup Global Markets Inc.**
388 Greenwich St.
New York, NY 10013
**Pierce, Fenner & Smith Incorporated**
World Financial Center, North Tower
250 Vesey Street
New York, New York 10080

**UBS Securities LLC**
1285 Avenue of The Americas
New York NY 10019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

———————————————————— X

ARLETTE MILLER, on Behalf of Herself
and All Others Similarly Situated,

                 Plaintiff,

     vs.

WACHOVIA CORPORATION,
WACHOVIA CAPITAL TRUST IX, G.
KENNEDY THOMPSON, MARK C.
TREANOR, THOMAS J. WURTZ,
PETER M. CARLSON, JOHN D. BAKER
II, ROBERT J. BROWN, PETER C.
BROWNING, JOHN T. CASTEEN, III,
JEROME A. GITT, WILLIAM H.
GOODWIN, JR., MARYELLEN C.
HERRINGER, ROBERT A. INGRAM,
DONALD M. JAMES, MACKEY J.
McDONALD, JOSEPH NEUBAUER,
TIMOTHY D. PROCTOR, ERNEST S.
RADY, VAN L. RICHEY, RUTH G.
SHAW, LANTY L. SMITH, JOHN C.
WHITAKER, JR., DONA DAVIS
YOUNG, WACHOVIA CAPITAL
MARKETS, LLC, CITIGROUP GLOBAL
MARKETS INC., MERRILL LYNCH,
PIERCE, FENNER & SMITH
INCORPORATED, MORGAN STANLEY
& CO. INCORPORATED and UBS
SECURITIES LLC,

                Defendants.

———————————————————— X

Index No. 001970/2008

<u>CLASS ACTION</u>

COMPLAINT FOR VIOLATION OF
THE FEDERAL SECURITIES LAWS

<u>DEMAND FOR JURY TRIAL</u>

## NATURE OF THE ACTION

1.       This is a securities class action on behalf of all persons who acquired the preferred stock of Wachovia Corporation ("Wachovia" or the "Company") pursuant and/or traceable to a false and misleading registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's May 2007 offering of the Company's 6.375% Trust Preferred Securities (the "Offering"). This action asserts strict liability claims under the Securities Act of 1933 ("1933 Act") against Wachovia, its senior insiders, the Wachovia trust which issued the securities, and the investment banks which underwrote the May 2007 Offering (collectively, "Defendants").

2.       Defendant Wachovia is registered as a financial holding company and a bank holding company, and provides commercial and retail banking and trust services through full-service banking offices.  Wachovia is headquartered in Charlotte, North Carolina and has branch offices in the United States and around the globe.

3.       Defendants consummated Wachovia's Offering pursuant to the false and misleading Registration Statement, selling 30 million shares at $25 per share, for proceeds of approximately $750 million.

4.       Wachovia ultimately announced huge charges associated with its mortgage portfolio, causing the price of Wachovia's common stock and the preferred securities issued in the Offering to decline.

5.     The true facts which were omitted from the Registration Statement were:

(a)     Defendants' portfolio of collateralized debt obligations ("CDOs") contained billions of dollars worth of impaired and risky securities, many of which were backed by subprime mortgage loans;

(b)     Defendants failed to properly account for highly leveraged loans such as mortgage securities; and

(c)     Wachovia had been heavily involved in mortgages involving the pay-option adjustable rate mortgages ("ARMs"). These pay-option ARMs provided that, during the initial term of the loan, borrowers could pay only as much as they desired with any underpayment being added to the loan balance. These loans would become toxic (for both Wachovia and the borrowers) once house prices stopped increasing at a rapid rate.

## JURISDICTION AND VENUE

6.     The claims alleged herein arise under §§11, 12(a)(2) and 15 of the 1933 Act, 15 U.S.C. §§77k, 77l(a)(2) and 77o. Jurisdiction is conferred by §22 of the 1933 Act and venue is proper pursuant to §22 of the 1933 Act. Section 22 of the 1933 Act explicitly states that "[e]xcept as provided in section 16(c), no case arising under this title and brought *in any State court* of competent jurisdiction shall be removed to any court in the United States." Section 16(c) refers to "covered class actions," which are defined as lawsuits brought as class actions or brought on behalf of more than 50 persons asserting claims *under state or common law*. This is an action asserting federal law claims. Thus, it does not fall within the definition of a "covered class action" under §16(b)-(c) and therefore is not removable to federal court under the Securities Litigation Uniform Standards Act of 1998.

- 2 -

7. The violations of law complained of herein occurred in this County, including the preparation and dissemination of the materially false and misleading Registration Statement complained of herein, which statements were disseminated into this County. Wachovia and each of the underwriter defendants conduct business in this County. Plaintiff resides in this County.

## PARTIES

8. Plaintiff Arlette Miller acquired the preferred securities of Wachovia pursuant or traceable to the Offering and has been damaged thereby.

9. Defendant Wachovia is headquartered in Charlotte, North Carolina. Wachovia is the sponsored trustee of Wachovia Capital Trust IX.

10. Defendant Wachovia Capital Trust IX (the "Trust") was designed to sell preferred securities and invest the proceeds in Wachovia assets.

11. Defendant G. Kennedy Thompson ("Thompson") is, and at all relevant times was, Chairman of the Board, Chief Executive Officer ("CEO") and President of Wachovia. Thompson signed the Registration Statement.

12. Defendant Mark C. Treanor ("Treanor") is, and at all relevant times was, Senior Executive Vice President, Secretary and General Counsel of Wachovia. Treanor signed the Registration Statement.

13. Defendant Thomas J. Wurtz ("Wurtz") is, and at all relevant times was, Chief Financial Officer ("CFO") and Senior Executive Vice President of Wachovia. Defendant Wurtz signed the Registration Statement.

14.     Defendant Peter M. Carlson ("Carlson") was, at all relevant times, a director of Wachovia. Defendant Carlson signed the Registration Statement.

15.     Defendant John D. Baker II ("Baker") was, at all relevant times, a director of Wachovia. Defendant Baker signed the Registration Statement.

16.     Defendant Robert J. Brown ("Brown") was, at all relevant times, a director of Wachovia. Defendant Brown signed the Registration Statement.

17.     Defendant Peter C. Browning ("Browning") was, at all relevant times, a director of Wachovia. Defendant Browning signed the Registration Statement.

18.     Defendant John T. Casteen, III ("Casteen") was, at all relevant times, a director of Wachovia. Defendant Casteen signed the Registration Statement.

19.     Defendant Jerome A. Gitt ("Gitt") was, at all relevant times, a director of Wachovia. Defendant Gitt signed the Registration Statement.

20.     Defendant William H. Goodwin, Jr. ("Goodwin") was, at all relevant times, a director of Wachovia. Defendant Goodwin signed the Registration Statement.

21.     Defendant MaryEllen C. Herringer ("Herringer") was, at all relevant times, a director of Wachovia. Defendant Herringer signed the Registration Statement.

22.     Defendant Robert A. Ingram ("Ingram") was, at all relevant times, a director of Wachovia. Defendant Ingram signed the Registration Statement.

23.     Defendant Donald M. James ("James") was, at all relevant times, a director of Wachovia. Defendant James signed the Registration Statement.

24.     Defendant Mackey J. McDonald ("McDonald") was, at all relevant times, a director of Wachovia. Defendant McDonald signed the Registration Statement.

- 4 -

25.     Defendant Joseph Neubauer ("Neubauer") was, at all relevant times, a director of Wachovia.  Defendant Neubauer signed the Registration Statement.

26.     Defendant Timothy D. Proctor ("Proctor") was, at all relevant times, a director of Wachovia.  Defendant Proctor signed the Registration Statement.

27.     Defendant Ernest S. Rady ("Rady") was, at all relevant times, a director of Wachovia.  Defendant Rady signed the Registration Statement.

28.     Defendant Van L. Richey ("Richey") was, at all relevant times, a director of Wachovia.  Defendant Richey signed the Registration Statement.

29.     Defendant Ruth G. Shaw ("Shaw") was, at all relevant times, a director of Wachovia.  Defendant Shaw signed the Registration Statement.

30.     Defendant Lanty L. Smith ("Smith") was, at all relevant times, a director of Wachovia.  Defendant Smith signed the Registration Statement.

31.     Defendant John C. Whitaker, Jr. ("Whitaker") was, at all relevant times, a director of Wachovia.  Defendant Whitaker signed the Registration Statement.

32.     Defendant Dona Davis Young ("Young") was, at all relevant times, a director of Wachovia.  Defendant Young signed the Registration Statement.

33.     The defendants referenced above in ¶¶11-32 are referred to herein as the "Individual Defendants."

34.     Defendant Wachovia Capital Markets, LLC ("Wachovia Capital") is a non-bank affiliate of Wachovia.  Wachovia Capital acted as sole structuring coordinator and sole Book Runner and an underwriter of the Offering.

35.    Defendant Citigroup Global Markets Inc. ("Citigroup") was an underwriter and a senior co-manager of the Offering.

36.    Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") was an underwriter and a senior co-manager of the Offering.

37.    Defendant Morgan Stanley & Co. Incorporated ("Morgan Stanley") was an underwriter and a senior co-manager of the Offering.

38.    Defendant UBS Securities LLC ("UBS") was an underwriter and a senior co-manager of the Offering.

39.    Pursuant to the 1933 Act, the defendants referenced in ¶¶34-38 above are referred to herein as the "Underwriter Defendants."

40.    The Underwriter Defendants are *strictly liable* for the false and misleading statements in the Registration Statement. In connection with the Offering, the Underwriter Defendants drafted and disseminated from this County the Registration Statement and were paid fees in connection therewith. The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

## CLASS ACTION ALLEGATIONS

41.    Plaintiff brings this action as a class action pursuant to CPLR 901, *et seq.*, on behalf of a class consisting of all persons or entities who acquired shares of Wachovia's 6.375% Trust Preferred Securities pursuant and/or traceable to the Company's Registration Statement for its Offering and who were damaged thereby (the "Class"). Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times,

members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

42.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Wachovia or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. Wachovia has more than 32 million shares of preferred stock outstanding.

43.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

44.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

45.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are: whether defendants violated the 1933 Act; whether the Registration Statement misrepresented and/or omitted material facts about the business, operations and/or management of Wachovia; and to what extent the members of the Class have sustained damages and the proper measure of damages.

- 7 -

46.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.   There will be no difficulty in the management of this action as a class action.

## BACKGROUND

47.    Wachovia was formed in 2001 when East Coast banking heavyweight First Union bought Wachovia and took the smaller firm's name.  Wachovia is the fourth-largest U.S. bank behind Citigroup, Bank of America and JP Morgan Chase.  It has some 3,400 branches in around 20 eastern and southern states, as well as California.  Retail brokerage Wachovia Securities has more than 3,300 offices across the U.S.

48.    In 2006, Wachovia acquired Golden West Financial, a mortgage company specializing in adjustable rate mortgages.  These mortgages would ultimately be extremely problematic in the mortgage melt-down.  By early 2007, Wachovia was already experiencing problems from these and other mortgages.

## THE FALSE AND DEFECTIVE REGISTRATION STATEMENT AND PROSPECTUS

49.    On or about February 7, 2007, Wachovia filed with the Securities and Exchange Commission ("SEC") a Form S-3 Registration Statement for the Preferred Securities Offering.  The securities were to be issued by the Trust, which is a Delaware trust designed to issue preferred securities and invest the proceeds from the sale of securities.

50.     On or about May 1, 2007, Wachovia filed its Prospectus for the Offering, which forms part of the Registration Statement and which became effective on May 8, 2007, and at least 30 million shares of Wachovia preferred stock were sold to the public at $25.00 per share.

51.     The Registration Statement and Prospectus contained untrue statements of material fact or omitted to state other facts necessary to make the statements made therein not misleading and was not prepared in accordance with applicable SEC rules and regulations.

52.     The Registration Statement and Prospectus included the following statements:

At December 31, 2006, Wachovia had consolidated total assets of $707.1 billion, consolidated total deposits of $407.5 billion and consolidated stockholders' equity of $69.7 million.

53.     The Registration Statement and Prospectus also incorporated by reference Wachovia's 2006 Form 10-K which stated in part:

Goals for 2007

    For the next year, we will maintain our focus on execution as we migrate the Golden West mortgage model to Wachovia channels and as we introduce Wachovia's General Banking model to our new western markets. At the same time, we will continue to grow our core businesses by capitalizing on the opportunities I have discussed in this letter. I believe that the wealth of opportunities available to us are a great indication of the strength and potential of this company.

Pride with Wachovia

    Determination is one of the defining strengths of our company. We take great pride in delivering on what we promise. In 2007 we are more determined than ever to ensure our investors share in our success, and we will not rest until the markets respond with a valuation that reflects our financial performance. We fully expect to deliver on our goal of being a top quartile performer for our investors.

- 9 -

2006 was an important year for Wachovia for many reasons. One of the most important was that it brought Herb and Marion Sandler into our corporate family. Herb and Marion built a company, Golden West, which had perhaps the greatest record of any American corporation over the last 25 years. For the last few months Wachovia has been the beneficiary of their management skills and wisdom.

*        *        *

If more variable rate loans were added to our loan portfolio, we would likely allow fixed rate securities to mature or we would liquidate them, and then add new derivatives that, in effect, would convert the incremental variable rate loans to fixed rate loans. For example, Golden West option ARMs, despite being a monthly floating rate product, reprice on an index that generally lags changes in short-term rates. A portion of these option ARMs are funded with short-term floating rate notes, which together create a profile that is liability-sensitive as measured under our earnings sensitivity analysis. Therefore, in advance of the Golden West merger, we reduced the size of our fixed rate exposure in residential mortgage-backed securities and commercial mortgage-backed securities in order to help achieve the desired interest rate risk profile for the combined company.

54.     The statements above were inaccurate statements of material facts because they failed to disclose the large amount of impaired mortgage debt on Wachovia's balance sheet.

55.     Under the rules and regulations governing the preparation of the Registration Statement, the Registration Statement should have disclosed the following facts but did not:

(a)     Defendants' portfolio of CDOs contained billions of dollars worth of impaired and risky securities, many of which were backed by subprime mortgage loans;

(b)     Defendants failed to properly account for highly leveraged loans such as mortgage securities; and

(c)     Wachovia had been heavily involved in mortgages involving the pay-option adjustable ARMs. These pay-option ARMs provided that during the initial term of the loan borrowers could pay only as much as they desired with any underpayment being

- 10 -

added to the loan balance. These loans would become toxic (for both Wachovia and the borrowers) once house prices stopped increasing at a rapid rate.

56.     Following the Offering, the Trust securities traded between $24 and $25 per share.

57.     On October 19, 2007, Wachovia issued a release announcing its financial results for the full year 2006, which included results for the fourth quarter of 2006, which stated in part:

- Lower earnings reflecting disruption in the capital markets resulting in valuation losses of $1.3 billion before tax and reduced origination and distribution revenues in the Corporate and Investment Bank.

- Revenue growth led by a 28 percent increase in net interest income, including Golden West, coupled with disciplined expense control partially offset lower fee income.

- Average loans up 53 percent, driven by higher consumer real estate loans related to the Golden West acquisition, and strong organic growth in commercial, international and auto lending.

- Average core deposits up 30 percent, including Golden West. Sales productivity solid in expanded markets.

- Net charge-offs rose 3 basis points to an annualized 0.19 percent of average net loans. Increased provision for credit losses reflects modest deterioration in credit quality, a more uncertain credit environment and loan growth. Higher nonperforming assets largely related to Golden West consumer real estate NPAs and to higher commercial real estate NPAs largely related to downgrades of residential developers.

- Customer loyalty scores at near record 53.1 percent; organic customer acquisition grew 14.8 percent annualized.

*     *     *

Wachovia Corp. today reported net income of $1.69 billion, or 89 cents per share, in the third quarter of 2007 compared with $1.88 billion, or $1.17 per share, in the third quarter of 2006.

After-tax net merger-related expenses amounted to 1 cent per common share in the third quarter of 2007 and 2 cents per common share in the third quarter of 2006. Excluding these expenses, earnings were $1.71 billion, or 90 cents per share, in the third quarter of 2007 and $1.90 billion, or $1.19 per share, in the third quarter of 2006.

"I'm very proud of our ability to provide capital, liquidity and advice to our customers and peers in the face of the disruption in the fixed income markets in the third quarter. These conditions clearly had a disappointing impact on the results of market-oriented businesses, but the strength in our core banking and brokerage businesses continued to serve us very well," said Ken Thompson, Wachovia chairman and chief executive officer. "Our loan and deposit trends were solid, and our retail brokerage performance was strong – and poised for even more growth as our A.G. Edwards colleagues join our team. Additionally, the first of our World Savings branch and deposit conversions was completed successfully last weekend, and going forward, attention in our expanded platform returns fully to sales production. While the impact of the market disruption was significant, it's worth noting that the majority of the lower market valuations in the third quarter largely arose from a repricing of risk in the marketplace and do not reflect deterioration in the underlying credit quality of the assets in our leveraged finance and commercial real estate securitization businesses. Looking ahead, we're taking the appropriate steps to ensure that as markets remain unsettled, we focus intently on actively managing our exposures and controlling costs. Longer term, we believe the challenges of the third quarter will be an advantage to companies like Wachovia with strong capital and liquidity positions and a clear understanding of the needs of customers and investors."

Results in the third quarter of 2007 included the full quarter impact of the October 1, 2006, acquisition of Golden West. Results do not include the impact of the acquisition of A.G. Edwards, Inc., a retail brokerage firm headquartered in St. Louis, Missouri, which closed on October 1 of this year.

\*       \*       \*

In the third quarter of 2007 compared with the third quarter of 2006, Wachovia:

- Grew revenue 4 percent on higher loans and deposits, driven by the addition of Golden West and organic growth, while fee and

other income declined reflecting disruption in the capital markets in fixed income and other market-related fees, including net valuation losses of:

- ○ 1.3 billion in the Corporate and Investment Bank on structured products and leveraged finance warehouse loans and commitments; and

- ○ $40 million in Capital Management on asset-backed commercial paper investments.

- Increased net interest income 28 percent reflecting growth in average commercial loans, up 16 percent, and higher average consumer loans, including the impact of acquisitions.

- Generated strong commercial loan growth led by strength in middle-market commercial, large corporate and international lending. Increased consumer loans were led by higher real estate loans primarily due to the addition of Golden West, as well as growth in auto lending.

- Also generated 30 percent growth in average core deposits while average low-cost core deposits were up 7 percent.

- Generated continued strong performance in retail brokerage managed account fees and solid retail brokerage transaction activity. Strong principal investing results and higher traditional banking fees also contributed to growth.

- Held noninterest expense growth, including the effect of acquisitions, to 8 percent largely reflecting lower revenue-based compensation in light of the market disruption.

- Recorded a provision for credit losses of $408 million reflecting modest deterioration in credit quality, a more uncertain credit environment and loan growth. Net charge-offs were $206 million, or an annualized 0.19 percent of average net loans. Total nonperforming assets including loans held for sale were $3.0 billion, or 0.63 percent of loans, foreclosed properties and loans held for sale.

Earnings in the third quarter of 2007 included a $249 million after-tax benefit related to correction of errors primarily in earlier periods in 2007. This related primarily to incorrect application of hedge accounting to certain variable rate demand deposits in the second quarter of 2007. Wachovia's

management believes that this impact is not material to current or prior period financial statements, and the Audit Committee of Wachovia's Board of Directors, based on information reviewed by management with the Committee, concurred with management's conclusion.

58.   On this news, the price of Wachovia common stock dropped to $46.40 per share. The stock continued to drift lower after this announcement on suspicions the Company would announce larger write-downs. The preferred shares fell from $23 in late October to as low as $20.40 per share in the first week of November. These fears were confirmed on November 8, 2007, when Wachovia announced the Company was setting aside $600 million in the fourth quarter and said securities linked to subprime mortgages dropped by $1.1 billion in October 2007. This followed write-downs of $1.3 billion in the third quarter. Wachovia stated:

> Wachovia Corporation today is providing information on the impact of market volatility on its financial results for the month of October and is providing further information on its expectation for credit costs for the fourth quarter of 2007 and certain additional information. Wachovia is providing this information in advance of a presentation by a senior executive on November 9, 2007 to investors and analysts. This same information will be included in Wachovia's Third Quarter Report on Form 10-Q that will be filed on November 9, 2007:

> **October Market Events** Following our October 2007 announcement of third quarter 2007 results of operations and our financial outlook for the remainder of 2007, certain financial markets experienced further deterioration, particularly the markets for subprime residential mortgage-backed securities ("RMBS") and for collateralized debt obligations ("CDOs") collateralized by RMBS ("ABS CDOs"). In October, rising defaults and delinquencies in subprime residential mortgages and rating agencies' downgrades of a large number of subprime residential mortgage-related securities led to unprecedented declines in the ABX subprime indices, that contributed to a rapid decline in the valuations of subprime RMBS and ABS CDOs.

*   *   *

The value of CDOs we have in our portfolio depends on the value of the underlying collateral. ABS CDOs experienced declines in value correlated to the declines in value of subprime RMBS in October. Our third quarter 2007 market disruption-related losses totaling $1.3 billion pre-tax included $347 million of subprime-related valuation losses, net of hedges, on ABS CDOs. Due to the October market deterioration, these ABS CDOs experienced further declines in value in the month of October 2007 by an amount we currently estimate to be approximately $1.1 billion pre-tax. At October 31, 2007, we had remaining exposure to ABS CDOs of $676 million, including on-balance sheet positions and the notional amount of off-balance sheet positions, compared to $1.8 billion at September 30, 2007.

We have exposure to subprime RMBS in other positions totaling $2.1 billion at both October 31, 2007, and September 30, 2007. Estimated aggregate valuation losses of these other positions during the month of October 2007 are immaterial net of hedges.

\*       \*       \*

Of the remaining asset classes where we recorded market disruption-related losses in the third quarter of 2007, the aggregate net market value changes in October in these investments have not been significant. These asset classes include commercial mortgage, leveraged finance, consumer mortgage, and other structured credit products not collateralized by subprime RMBS. Some of the markets for these asset classes continue to demonstrate poor liquidity and higher than typical volatility while others have displayed moderate stability in October.

The fair values of all of our assets that are subject to market valuation adjustments, including subprime RMBS and ABS CDOs, depend on market conditions and assumptions that may change over time. Accordingly, the fair values of these investments in future periods, including at the end of the fourth quarter, and their effect on our financial results, will depend on future market developments and assumptions and may be materially greater or less than the changes in values during October discussed above. For example, markets for all asset classes discussed above have remained extraordinarily volatile in the first week of November, with additional rating agencies' downgrades on subprime RMBS and ABS CDOs, and credit spread widening and illiquidity.

Wachovia has historically been a major participant in structuring and underwriting CDOs. As measured by lead underwriter league table rankings, Wachovia ranked 3rd for both the first nine months of 2007 and the full year 2006, with issuance volumes of $19.6 billion and $23.4 billion, respectively. The primary focus of Wachovia's CDO business has been, and continues to

- 15 -

be, transactions backed by commercial loans and commercial real estate loans. Our issuance of ABS CDOs has been limited.  We originated three ABS CDOs in the first nine months of 2007 and six in full year 2006, accounting for approximately 16 percent and 23 percent, respectively, of the total issuance volume of our CDO business during these periods.

Additionally, due to anticipated loan growth and the impact of continuing credit deterioration in our loan portfolio, we expect to increase our allowance for loan losses in the fourth quarter of 2007.  The expected credit deterioration will likely be focused in certain geographic areas that have recently experienced dramatic declines in housing values.  We expect that these declines will correlate to increases in loan losses for loans originated within the last two years within these geographic areas.   Accordingly, Wachovia now expects to record a loan loss provision in the fourth quarter of 2007 by an amount estimated to be between $500 million and $600 million in excess of charge-offs for the quarter.  The actual provision will be determined in accordance with our policies and procedures, will depend on credit conditions and assumptions at quarter-end and may be materially greater or less than the range discussed in the preceding sentence.

59.    As the *Associated Press* reported on November 9, 2007, after Wachovia's announcement:

Wachovia Corp. said Friday the value of securities it owns that are backed by loans sank by about $1.1 billion in October, making it the latest major financial institution to warn of continuing losses in the credit markets.

The nation's fourth largest banking company also said it plans to boost its allowance for loan losses in the fourth quarter due to expected credit deterioration in the housing market in certain regions.  The provision is pegged at $500 million to $600 million in excess of charge-offs in the quarter.

Wachovia shares dropped $1.43, or 3.6 percent, to $38.87 in morning trading Friday after falling to a new 52-week low of $38.05.

The news heightened fears that the fallout from the subprime turmoil is spreading deeper into credit markets.  It also raised questions about the bank's October 2006 acquisition of adjustable-rate mortgage lender Golden West Financial Corp. of Oakland, Calif.

"We believe the company is trying to get ahead of likely higher future mortgage losses in California," Deutsche Bank Securities analyst Mike Mayo wrote in a client note.  "Per Golden West, it now becomes even more obvious that Wachovia purchased the thrift at the wrong time of the cycle."

The weakening markets – which Wachovia estimates could get worse over the last two months of the quarter – cut the value of the bank's so-called collateralized debt obligations by more than 60 percent.

As of Sept. 30, Wachovia had $1.8 billion in CDO exposure; after the latest writedowns, the exposure is now $676 million.

CDOs are complex instruments that combine slices of different kind of risk. CDOs are often backed, in part, by subprime mortgages – loans given to customers with poor credit history. As those mortgages have increasingly defaulted, the value of the CDOs has plummeted.

Wachovia has an additional $2.1 billion of exposure to more traditional subprime mortgage-backed bonds. The value of those holdings remained steady in October as hedging strategies offset losses.

In a regulatory filing with the Securities and Exchange Commission, the financial services provider said the market in November so far remains "extraordinarily volatile."

Analysts polled by Thomson Financial, on average, were forecasting earnings of $1.08 per share for Wachovia before the writedown announcement.

Friedman Billings Ramsey analyst Gary B. Townsend predicted Friday that Wachovia's shares "will remain under pressure until real estate markets and nonperforming assets levels stabilize."

60.    On this news, Wachovia's stock price collapsed to below $40 per share. The preferred shares dropped to nearly $20 per share on this news.

## FIRST CAUSE OF ACTION

### Violations of §11 of the 1933 Act
### Against All Defendants

61.    Plaintiff repeats and realleges each and every allegation contained above.

62.    This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

- 17 -

63.     The Registration Statement was false and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

64.     Wachovia is the registrant for the Offering. As issuer of the shares, Wachovia is strictly liable to plaintiff and the Class for the misstatements and omissions.

65.     The Individual Defendants named herein were responsible for the contents and dissemination of the Registration Statement. Each of the Individual Defendants signed or authorized the signing of the Registration Statement. None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

66.     By reason of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

67.     Plaintiff acquired Wachovia shares pursuant and/or traceable to the Registration Statement for the Offering.

68.     Plaintiff and the Class have sustained damages. At the time of their purchases of Wachovia shares, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to October 2007. Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff filed this complaint. Less than three years

elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this complaint.

## SECOND CAUSE OF ACTION

### Violations of §12(a)(2) of the 1933 Act
### Against All Defendants

69.     Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein. For purposes of this Cause of Action, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Cause of Action is based solely on claims of strict liability and/or negligence under the 1933 Act.

70.     By means of the defective Registration Statement, defendants assisted in the sale of shares of the Company's securities to plaintiff and other members of the Class.

71.     The Registration Statement contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants owed plaintiff and the other members of the Class who purchased Wachovia securities pursuant to the Registration Statement the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Registration Statement as set forth above.

- 19 -

72.     Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Registration Statement at the time she acquired the Company's securities.

73.     By reason of the conduct alleged herein, defendants violated §12(a)(2) of the 1933 Act. As a direct and proximate result of such violations, plaintiff and the other members of the Class who purchased Wachovia preferred shares pursuant to the Registration Statement sustained substantial damages in connection with their purchases of Wachovia shares. Accordingly, plaintiff and the other members of the Class who hold such shares have the right to rescind and recover the consideration paid for their shares, and hereby tender their shares to the defendants sued herein. Class members who have sold their shares seek damages to the extent permitted by law.

### THIRD CAUSE OF ACTION

#### Violations of §15 of the 1933 Act
#### Against the Individual Defendants

74.     Plaintiff repeats and realleges each and every allegation contained above.

75.     This Cause of Action is brought pursuant to §15 of the 1933 Act against the Individual Defendants.

76.     Each of the Individual Defendants was a control person of Wachovia by virtue of his or her position as a director, senior officer and/or major shareholders of Wachovia which allowed each of these defendants to exercise control over Wachovia and its operations.

77.     Each of the Individual Defendants was a culpable participant in the violations of §11 of the 1933 Act alleged in the Cause of Action above, based on their having signed or

- 20 -

authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the Offering to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action and certifying plaintiff as a Class representative;

B.     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.     Awarding rescission or a rescissory measure of damages; and

E.     Such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: January 31, 2008              COUGHLIN STOIA GELLER
                                       RUDMAN & ROBBINS LLP
                                     SAMUEL H. RUDMAN
                                     DAVID A. ROSENFELD
                                     MARIO ALBA, JR.


                                     _____
                                         SAMUEL H. RUDMAN

                                     58 South Service Road, Suite 200
                                     Melville, NY 11747
                                     Telephone: 631/367-7100
                                     631/367-1173 (fax)

- 21 -

COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
DAVID C. WALTON
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ABRAHAM FRUCHTER
   & TWERSKY LLP
JACK G. FRUCHTER
One Pennsylvania Plaza, Suite 2805
New York, NY 10119
Telephone: 212/279-5050
212/279-3655 (fax)

*Attorneys for Plaintiff*

- 22 -

Index Number _____        Year _____

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

ARLETTE MILLER, on Behalf of Herself and All Others Similarly Situated,

Plaintiff,

-against-

WACHOVIA CORPORATION, WACHOVIA CAPITAL TRUST IX, G. KENNEDY
THOMPSON, MARK C. TREANOR, THOMAS J. WURTZ, PETER M. CARLSON,
JOHN D. BAKER II, ROBERT J. BROWN, PETER C. BROWNING, JOHN T.
CASTEEN, III, JEROME A. GITT, WILLIAM H. GOODWIN, JR., MARYELLEN C.
HERRINGER, ROBERT A. INGRAM, DONALD M. JAMES, MACKEY J. McDONALD,
JOSEPH NEUBAUER, TIMOTHY D. PROCTOR, ERNEST S. RADY, VAN L. RICHEY,
RUTH G. SHAW, LANTY L. SMITH, JOHN C. WHITAKER, JR., DONA DAVIS
YOUNG, WACHOVIA CAPITAL MARKETS, LLC, CITIGROUP GLOBAL MARKETS
INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, MORGAN
STANLEY & CO. INCORPORATED and UBS SECURITIES LLC,

Defendants.

## SUMMONS
## AND
## COMPLAINT FOR VIOLATION
## OF THE FEDERAL SECURITIES LAWS

Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the court of
New York State, certifies that, upon information and belief and reasonable inquiry, the
contentions contained in the annexed document are not frivolous.*

*Dated: January 31, 2008*

*Signature* _____

*Print Signer's Name* Samuel H. Rudman _____